**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| **vs.** | : |
| | : |
| **JAMES F. LYNCH** | :      **Crim. No. 07-431-1** |

**<u>DEFENDANT JAMES LYNCH'S REPLY IN SUPPORT OF</u>**
**<u>MOTION TO VACATE</u>**

The government's response brief shows several points of agreement between the parties: one, that Mr. Lynch continues to suffer the consequences of his conviction, and thus may pursue coram nobis relief[1]; two, that Mr. Lynch did not waive this collateral attack when he pled guilty; three, that conviction of conduct that is not criminal is a fundamental error; and four, that Mr. Lynch pled guilty to conduct that is no longer a crime. <u>See</u> Government Response Brief ("Response") at 13-18, 19, 28.

In opposition to the requested relief, however, the government argues that Mr. Lynch must demonstrate actual innocence of bribery, whether or not he was ever charged with bribery to begin with. Citing a "record" consisting of its own Guilty Plea Memorandum – containing representations of fact that the defendant did not admit – the government asks that this Court essentially adjudicate Mr. Lynch guilty of a crime that (the defense contends) the Information did not fairly charge. Even if the Court holds that Mr. Lynch must demonstrate actual innocence, it certainly should decline to treat a government memorandum as "evidence." At a

---

[1]    Having conceded this point, the government nonetheless devotes several pages of briefing to arguing that Mr. Lynch would not be suffering collateral consequences were he not still paying a fine. The briefing is irrelevant given the concession.

1

minimum the Court must hold a hearing at which the parties may adduce real evidence on the question of guilt or innocence.

## I.      The *Bousley* "Actual Innocence" Standard Does Not Apply on Coram Nobis.

The Third Circuit has not spoken with one voice on the question of whether the standard for coram nobis is stricter than the standard for habeas relief.  Compare United States v. Osser, 864 F.2d 1056, 1060 (3d Cir. 1988) ("relief is no more readily granted in a collateral attack by habeas corpus than one using coram nobis") with United States v. Stoneman, 870 F.2d 102, 106 (3d Cir. 1989) (the standard for coram nobis is "even more stringent" than that for § 2255).  For purposes of argument the defense will assume that it is.  All of the government's quotations are accurate as far as they go, but they do not require engrafting upon coram nobis a standard that neither the Supreme Court nor the circuit requires:  actual innocence.  The "extraordinary" nature of coram nobis relief is *already* embodied in the fact that coram nobis is limited to "fundamental error," rather than the broader range of errors that may be corrected under 28 U.S.C. § 2255.  The Seventh Circuit, which the government lauds as "firm and vigilant" in restricting coram nobis relief, Response at 35, has declined to import the "cause and prejudice" standard from the habeas context to coram nobis for just this reason:  the "fundamental error" standard already limits coram nobis relief to manifest injustices.  United States v. Darnell, 716 F.2d 479, 481 & n.5 (7th Cir. 1983).

Proving "actual innocence" is, of course, an alternative to proving "cause and prejudice" for the habeas petitioner who presses a § 2255 claim that he has procedurally defaulted.  Bousley v. United States, 523 U.S. 614, 623 (1998).  Both are hurdles that the courts have deemed necessary to protect the integrity of that statute, which prescribes when relief is available for unlawful sentences.  Defendants who seek §2255 relief despite violating the process that

2

Congress prescribed may, logically, be required to make an additional showing either excusing their default or demonstrating factual innocence. That is the rationale of <u>Bousley</u> and its predecessors. <u>See, e.g.</u>, <u>id.</u>; <u>Murray v. Carrier</u>, 477 U.S. 478, 495-96 (1986).

But a coram nobis claim does not seek §2255 relief despite default. As the Seventh Circuit recognizes, coram nobis is a different remedy that already encompasses a very strict standard: fundamental error. Actual innocence should no more be imported into coram nobis than should the parallel procedural barrier of cause and prejudice. <u>See</u> <u>Darnell</u>, 716 F.2d at 481 & n.5.

That is why the Third Circuit has repeatedly stated, and states to this day, that the writ of coram nobis requires fundamental error, continuing consequences of an invalid conviction, unavailability of the remedy at the time of trial, and "sound reasons" for failing to seek relief earlier. <u>United States v. Stoneman</u>, 870 F.2d 102, 106 (3d Cir. 1989). The government would have the Court hold that defendants must show these elements plus another that the circuit has never mentioned. None of the cases that the government cites employed "actual innocence" on coram nobis review.[2] What they actually did was hold that the defendant had **in fact been convicted** of facts that proved a valid prosecution theory. That is very different from "actual innocence" as applied on habeas review, which requires the defendant to demonstrate factual innocence of charged theories on which the finder of fact did not rely for the conviction.[3]

---

[2] A Supreme Court case that the government highlights, Calderon v. Thompson, 523 U.S. 538 (1998) (cited in Response at 22-23) applied "actual innocence" to a habeas case, and thus sheds no light on whether the standard applies outside of the habeas context.

[3] The government goes even further that this, and urges this Court to require Mr. Lynch to demonstrate factual innocence of uncharged theories that the government elected to forego. Response at 24. As explained further below, even if the Court concludes that a showing of actual innocence may be required in coram nobis cases, it should not go so far as to require that showing for uncharged conduct.

Indeed, the <u>Dorasainvil</u> case upon which the government relies stated explicitly that "actual innocence" is **not** at issue when determining a movant's entitlement to collateral relief outside of § 2255. <u>United States v. Dorasainvil</u>, 119 F.3d 245, 252 (3d Cir. 1997). The defense in that case contended, as the defense does here, that intervening case law had decriminalized the conduct underlying the conviction. Mr. Dorasainvil, like Mr. Bousley[4], had been convicted of "using or carrying" a firearm in violation of 18 U.S.C. § 924(c)(1). After the Supreme Court in <u>Bailey v. United States</u>, 516 U.S. 137 (1995), construed the statute to prohibit only "active employment" of a firearm, Mr. Dorasainvil filed a *pro se* petition under § 2255. He argued that the evidence showed only that he transported the firearm, not that he actively employed it. <u>Dorasainvil</u>, 119 F.3d at 247. Because he had filed an earlier § 2255 petition pre-<u>Bailey</u>, however, his second petition was procedurally barred as a "second or successive petition." <u>Id.</u> at 250. The circuit decided that he could maintain a §2241 petition despite the procedural bar, and remanded for the district court to determine whether he was entitled to relief. <u>Id.</u> at 252.

In the context of identifying issues that it ultimately remanded to the district court, the circuit made the statement that reveals the error of the government's contention here: "the question before us is **not** whether Dorasainvil is actually innocent of violating § 924(c)(1)." <u>Id.</u> (emphasis added). Instead, the circuit said, the question is whether the defendant is in fact suffering punishment for conduct that is no longer criminal (<u>id.</u>); that is, whether his conviction is based on decriminalized conduct, or on conduct that remains criminal. The circuit instructed the district court to examine "the full record of the evidence presented, the arguments made at

---

[4]    <u>Dorasainvil</u>'s rejection of the "actual innocence" analysis is all the more significant because the alleged basis for relief was identical to that in <u>Bousley</u>. The fact that the defendant in <u>Dorasainvil</u> would be pressing his claim outside of § 2255 was the sole – but apparently determinative – distinction.

4

trial, and the charge." Id. The instruction to review the charge is significant: it shows that the question at hand was what the jury had actually decided. That is the analysis that the court had explicitly endorsed in place of "actual innocence." Id. The question is not whether the defendant might be convict**able** on a different theory than that actually submitted to the finder of fact, but what the finder of fact actually convict**ed** him of.

The circuit's rationale for permitting Mr. Dorasainvil to pursue § 2241 collateral relief despite the procedural bar in §2255 illuminates its parallel decision to eschew the § 2255-specific procedural barrier of "actual innocence":

> Allowing someone in Dorasainvil's unusual position – that of a prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate, even when the government concedes that such a change should be applied retroactively – is hardly likely to undermine the gatekeeping provisions of §2255.

Id. at 251. As noted above, the actual innocence standard is a barrier erected to safeguard the integrity of §2255's procedural bar. Dorasainvil shows that that gatekeeping concern does not apply to defendants in the unusual situation in which Mr. Dorasainvil and Mr. Lynch find themselves: convicted of conduct that intervening law decriminalizes. No floodgates will open if defendants like these receive relief outside of § 2255 and its procedural hurdles.

Dorasainvil's rejection of the actual innocence standard for cases outside of §2255 is perfectly consistent with the post-McNally[5] coram nobis cases that the government cites. In each

---

[5] McNally v. United States, 483 U.S. 350, 360 (1987), held that the mail fraud statute, 18 U.S.C. §§ 1341, criminalized only schemes to defraud a victim of money or property, and not schemes to defraud a victim of the "intangible right of honest services." See discussion in Skilling v. United States, ___ U.S. ___, 130 S. Ct. 2896, 2926-27 (2010). Accordingly, people who had been convicted of an honest services theory of mail fraud collaterally attacked their convictions. The defense agrees with the government that the post-McNally collateral attack cases are instructive for this matter, but disagrees with the government about what they teach.

of those cases, the circuit asked whether the defendant had **in fact been convicted** on conduct

that remained criminal; specifically, "money or property" mail or wire fraud. The conceptual

underpinning was whether the defendant was suffering punishment for conduct that is no longer

criminal, just as in Dorasainvil. See id. at 252. For example, in United States v. Osser, 864 F.2d

1056 (3d Cir. 1988), a Philadelphia public official had been convicted of mail fraud for a bid

rigging and kickback scheme. Id. at 1057. The jury was told that it could convict upon either a

"money or property" theory or an "honest services" theory. Id. at 1058. On the facts presented,

however, the circuit found that a conviction for honest services fraud would necessarily entail a

finding of financial harm to the municipality. "The jury could not have found a fraudulent

scheme that consisted solely of depriving the citizens of their right to honest government that did

not also involve tangible losses by [Philadelphia]." Id. at 1062 (quoting United States v. Asher,

854 F.2d 1483, 1496 (3d Cir. 1988) (stating that "[t]he decisive factor in these circumstances is

whether 'the scheme or artifice had the inevitable result of effecting monetary or property losses

to the employer or to the state.'"). Agreeing with the government that the scheme had the

"inevitable result" of monetary loss, the circuit court held that the jury must have convicted Mr.

Osser of conduct that remained criminal post-McNally. Id. at 1058, 1063. Because his

punishment was supported by a conviction of conduct that was still a crime, he was not entitled

to coram nobis relief.

Similarly, in United States v. Stoneman, 870 F.2d 102 (3d Cir. 1989), the circuit court

considered the validity of a pre-McNally mail fraud conviction based on a bribery scheme. As in

Osser, the court held that the indictment had in fact charged a "money or property" mail fraud.

Id. at 104. And again citing Asher, the circuit held the intangible rights scheme necessarily

entailed the loss of money or property, just as it had in Osser: "the majority is unable to

hypothesize a set of circumstances under which the jury could have found Stoneman guilty of depriving the citizens of the [Commonwealth] of their right to honest government without also have found that Stoneman was involved in a scheme the sole purpose of which was to insure that a company . . . obtained a [federal contract] at a substantially greater cost to the [Commonwealth] than a contract obtained through traditional competitive bidding." Id. Thus, the jury had necessarily based the conviction on conduct that remained criminal after McNally. Because "Stoneman did not suffer a conviction for conduct that was not criminal," no relief was warranted. Id. at 108.

The Martinez case, from which the government inexplicably quotes at length, is even stronger on this point: it denied coram nobis relief because the defendant had been charged and convicted solely on a valid mail fraud theory. United States v. Martinez, 905 F.2d 709, 716 (3d Cir. 1990), abrogated on other grounds by Cleveland v. United States, 531 U.S. 12 (2000). Canvassing circuit precedent, it quoted phraseology embodying the concept that the existing conviction necessarily rested on a valid finding of money or property fraud; ranging from Asher's "inevitable result" and "unable to hypothesize" language, to "necessarily found," "could not escape," and "implicit in the intangible rights scheme." Id. (quoting cases, internal citations omitted). The concept embodied in all of them is that the defendant was **actually convicted** on a valid theory that the verdict necessarily entailed, not that he could have been convicted in a hypothetical proceeding presenting the valid theory.

Implicitly conceding, as it must, that the Third Circuit's post-McNally cases neither invoke the "actual innocence" standard, nor cite the Supreme Court cases applying it, nor apply its equivalent, the government attributes that omission to the fact that the cases predate Bousley. Response at 30. The government ignores the fact that the circuit had no problem applying

7

"actual innocence" to habeas cases after the 1986 <u>Murray</u> decision that created the standard (prior to all of the cases that the government cites), and before <u>Bousley</u> was decided in 1998. <u>See, e.g.</u>, <u>Glass v. Vaughn</u>, 65 F.3d 13 (3d Cir. 1995); <u>Landano v. Rafferty</u>, 970 F.2d 1230 (3d Cir. 1992); <u>Wide v. Fulcomer</u>, 958 F.2d 30 (3d Cir. 1992). The circuit did not apply the standard in its coram nobis cases because actual innocence does not apply to coram nobis. This Court should not break new ground with a contrary ruling.

It bears noting that if the Court applies – contrary to the government's urging – the "inevitable result" standard that the Third Circuit used post-<u>McNally</u>, Mr. Lynch's conviction cannot survive. As the government concedes, Mr. Lynch's existing conviction is predicated solely on the conflict of interest theory of honest services fraud. Response at 28. As explained further below (Section III), Mr. Lynch expressly contested facts that would be essential to a bribery theory. Moreover, it is quite clear from Supreme Court and Third Circuit jurisprudence that a finding of bribery is **not** implicit in a finding of an undisclosed conflict of interest. If it were, <u>Skilling</u> would not have approved the former theory and disapproved the latter. <u>Skilling</u>, 130 S. Ct. at 2926-27. <u>Panarella</u> would not have had to explicitly approve a conflict of interest theory as an alternative to bribery. <u>United States v. Panarella</u>, 277 F.3d 678, 690 (3d Cir. 2002) (Becker, J.). Yet they did. Because Mr. Lynch's conviction on an invalid theory does not necessarily entail conviction on a valid theory, he is entitled to relief.

**II.** **Even If The Actual Innocence Standard Applies To Coram Nobis Generally, The Court Should Not Require Mr. Lynch to Demonstrate Actual Innocence of A Theory That Was Not Charged.**

    **A.** A Defendant Need Not Demonstrate Actual Innocence Of An Offense That Was Not Charged.

As explained further below (Section II.B) and in Mr. Lynch's earlier briefing, the Information in this case did not charge a bribery theory of honest services fraud, but only an undisclosed conflict of interest.[6] The government disagrees. See Response at 24 et seq. Perhaps more significantly, the government contends in the alternative that charging is irrelevant: Mr. Lynch should be required to demonstrate actual innocence of bribery even if he was never charged with it. Response at 24.

This position admittedly finds some (equivocal) support in Bousley itself, albeit not in circuit case law applying the actual innocence standard. The ambiguity arises out of the distinction between plea bargaining and charge bargaining.

Plea bargaining, as described in Bousley, entails indictment on multiple charges and the negotiated dismissal of at least one of them. Bousley, 523 U.S. at 624. In the course of a plea bargain, the government may forego presenting evidence to support a bargained-away charge – but the defendant was charged with it. At the collateral attack stage, a hearing on actual innocence would permit the government (and, presumably, the defendant) to present evidence on all charges brought against the defendant, whether or not dismissed in a plea bargain. Id.

---

[6] The government makes a passing reference to the possibility of a "kickback" theory as referenced in Skilling, but the Third Circuit has recognized only two theories of honest services fraud applicable to public employees (bribery and undisclosed conflicts of interest); thus, it is inconceivable that Mr. Lynch was charged with a kickback theory as a distinct species of honest services fraud.

Had <u>Bousley</u> given only that example, then it would be relatively clear that a § 2255 movant need demonstrate his actual innocence only of charges that the government actually brought. But <u>Bousley</u> went on to imply that when record evidence shows that the government engaged in charge bargaining – electing not to bring a certain charge at all, in exchange for a plea – then the movant may also be required to demonstrate his actual innocence of that foregone charge as well. <u>Id.</u> ("And there is no record evidence that the Government elected not to charge petitioner with 'carrying' a firearm in exchange for his plea of guilty. Accordingly, petitioner need demonstrate no more than that he did not 'use' a firearm as that term is defined in <u>Bailey.</u>")

<u>Bousley</u> contains no more support for the government's position than this quoted negative implication, and the defense has found no Third Circuit case that required a § 2255 movant to demonstrate his actual innocence of charges that that the government had elected not to bring against him. <u>Cf., e.g.</u>, <u>Johnson v. Pinchak</u>, 392 F.3d 551, 564-65 (3d Cir. 1994) (requiring proof of actual innocence on charges brought then dismissed in plea bargain); <u>United States v. Lloyd</u>, 188 F.3d 184, 186 (3d Cir. 1999) (same). Justice Scalia, dissenting in <u>Bousley</u>, correctly pointed out the problem with requiring proof of actual innocence in a charge bargain situation: the record will almost never identify the bargained-away charge. <u>Id.</u> at 634. That is certainly the case here. Indeed, the Principles of Federal Prosecution that bind the U.S. Attorney's Office require the government to charge the "most serious readily provable" offense except in unusual circumstances not apparently present in this case – all but precluding the possibility that this case was charge bargained. U.S. Attorney's Manual 9-27.430, 9-27.300. The government itself maintains that it **did** charge bribery, not that it charge-bargained away the

bribery theory.[7]  Thus, under even the most generous reading of <u>Bousley</u>, which our circuit has not adopted (and assuming, of course, that the Court chooses to apply <u>Bousley</u> to coram nobis at all; <u>see</u> Section I, above), because no charge bargaining is present, Mr. Lynch must demonstrate actual innocence of bribery only if he was actually charged with bribery.

B.    <u>Mr. Lynch Was Not Charged With Bribery.</u>

The government's Response improperly conflates "intent" with "knowledge."  It also improperly conflates two critically-distinct concepts from bribery jurisprudence:  "influence" and "reward."  In both cases the government's argument dilutes the higher standard with a lower one.

As a backdrop for analyzing the indictment, the Court should bear in mind that when Judge Giles asked the prosecutor to identify the criminal agreement[8] in this matter, he stated:

> The agreement occurred once Mr. Lynch decided not to return that money and failed to disclose that he had received that money but continued to work with Mr. Campanella . . . .

Transcript of Change of Plea Hearing, attached as Exhibit "C" to Supplemental Submission, at 26:12-15.  The government itself identified the criminal agreement as failing to disclose a conflict of interest, while taking discretionary action to benefit that interest.  That is solely a conflict of interest theory.  <u>Panarella</u>, 277 F.3d at 690 (3d Cir. 2002) (defining the conflict of interest theory under § 1346).  Had the government intended to charge a bribery theory, it would

---

[7]    If the government changes its position and asserts that it forewent charging bribery as part of a plea negotiation or otherwise, then in so doing it will waive its privilege as to its charging decision.  If that happens, then the Court should require the government to produce its prosecution memo and any other documents relevant to the charging decision.  Indeed, if the Court considers the prosecutor's subjective intent to be relevant, then it should order discovery related to the charging decision in any event.

[8]    Mr. Lynch pled guilty to conspiring to commit honest services fraud under 18 U.S.C. § 371, not to substantive honest services fraud under 18 U.S.C. §§ 1341 or 1343, and § 1346.

have stated that the criminal agreement occurred when Mr. Lynch accepted the payment, intending to be influenced by it. <u>United States v. Kemp</u>, 500 F.3d 257, 281 (3d Cir. 2007) (defining bribery under § 1346). Instead, the government bypassed the giving and receiving of the payment and located the criminal agreement later in the factual sequence: at the retention, nondisclosure and failure to recuse. <u>See also</u> Transcript of Change of Plea Hearing, Exhibit "C," at 32:13-33:9 ("<u>[T]he Government contends</u> that honest services fraud is committed when he responds to Mr. Campanella's request, issues [City certifications] knowing that he had this undisclosed financial interest.") (emphasis added).

        1.        The Payee's Specific Intent to Be Influenced by a Payment, Not Mere Knowledge of the Giver's Intent, is Required to Convict the Payee of Bribery.

The government cites <u>Evans v. United States</u>, 504 U.S. 25 (1992), for the proposition that a public official who accepts a thing of value may be guilty of bribery even if he did not intend to be influenced by the payment. Instead, the government says, the payee is guilty if he merely knows of the payor's corrupt intent to influence him – and he need harbor no corrupt intent of his own. Response at 26. But knowledge is a lower standard than intent; and the Third Circuit has explicitly held that the payee in honest services fraud bribery is not guilty unless he has the <u>intent to be influenced</u> in an official action; that is, "a specific intent to . . . receive something of value in exchange for an official act." <u>Kemp</u>, 500 F.3d at 281 (emphasis added).

<u>Evans</u> is a Hobbs Act "color of official right" extortion case under 18 U.S.C. §1951, not an honest services fraud case. The distinction is important. When a public official uses the power of his office to extort money, the inducement for the payment is implicit in the power of the office itself. <u>Id.</u> at 266. The question presented in <u>Evans</u> was only whether an affirmative act of inducement (<u>e.g.</u>, a demand) is also an element of the extortion offense. <u>Id.</u> The <u>Evans</u> Court

accepted as proven that the public official had "receive[d] a payment in return for his agreement to perform specific official acts." Id. at 269 (emphasis added). That language illustrates that despite later *dicta* suggesting that "knowingly" substitutes for "intentionally" in Hobbs Act cases, the Evans Court was employing the same concept of an intentional exchange that Kemp later endorsed for honest services fraud bribery. Even if the mental state for the offenses actually differs, however, this Court may not substitute the lower "knowing" standard for the "specific intent" standard that the circuit has prescribed for § 1346 cases.[9] The Supreme Court in Skilling listed the statutes from which the definition of honest services fraud bribery "draws content," and omitted Hobbs Act extortion from the list. Skilling, 130 S. Ct. at 2933-34. Skilling did not even cite Evans. Neither, for that matter, did Kemp. This Court may not import into the honest services fraud bribery context the mental state that governs Hobbs Act extortion, whatever it actually is.

At any rate, even if Evans did apply to honest services fraud, the allegations in the Information would not satisfy it. The Information itself, and the government's characterization of it at the plea hearing, alleged that Mr. Campanella intended the payment "as **a reward** for the assistance provided by defendant Lynch **and to maintain his relationship** with defendant Lynch when the need for assistance arose in the future." Information at ¶ 3; see Transcript of Plea Hearing, Exhibit "C," at 23:14-19. As explained in Mr. Lynch's Supplemental Submission (at Section I.B), and further below (Section II.B.2), the Kemp Court took pains to explain that a "reward" is a gratuity and not a bribe; and that "building a reservoir of goodwill" is a

---

[9] Substituting a "knowing" standard for specific intent would be particularly problematic in the conspiracy context, in which a shared intent to commit the specified offense is the heart of the criminal conduct. See generally Third Circuit Model Jury Instruction 6.18.371A. A defendant's mere knowledge of his co-defendant's criminal intent would not prove that the defendant joined the conspiracy with the requisite criminal intent of his own.

noncriminal gift.  <u>Kemp</u>, 500 F.3d at 281.  Both fall short of the "intent to influence an official act" that is the hallmark of the payor's mental state in a bribery case.  <u>Id.</u>  Thus, the government never alleged Mr. Campanella's "intent to influence" Mr. Lynch, and certainly never alleged that Mr. Lynch accepted a payment "knowing" of that un-alleged intent.  Even if the Court were to substitute a "knowing" mental state for the required intent, the Information does not satisfy the <u>Evans</u> formulation.

The government sets up a straw person when it accuses Mr. Lynch of advocating a requirement of an "<u>explicit</u> intent to be influenced."  Response at 26.  Of course Mr. Lynch advocates no such thing.[10]  He advocates – with no lesser authority that a direct quote from <u>Kemp</u> – a <u>specific</u> intent to be influenced.  As the government admits, the <u>Kemp</u> indictment explicitly charged not only "the intent to influence" official actions, but the intent to "exchange" things of value for them.  Response at 26 (quoting <u>Kemp</u>, 500 F.3d at 280-81).  That is what *quid pro quo* bribery means:  an intentional exchange of a thing of value for an official act.  That is what the government never accused Mr. Lynch of.  That is why the Information did not charge bribery.

> 2.    Both A "Reward" and "Currying Favor" Fall Short of "Intent to Influence" and Thus Do Not Charge Bribery.

As noted in Mr. Lynch's Supplemental Submission, he pled guilty just one month after <u>Kemp</u> was decided, and the prosecutor in Mr. Lynch's case was trial counsel in <u>Kemp</u> and on the briefs in the appeal.  The author of the government's Response actually argued <u>Kemp</u>.  Surely

---

[10]    The Third Circuit held in <u>Antico</u> that the *quid pro quo* need not be explicit, which means only that it need not be express, lest "knowing winks and nods" frustrate the purpose of the statute.  <u>United States v. Antico</u>, 275 F.3d 245, 257 (3d Cir. 2001).  As <u>Kemp</u> clearly shows, that is perfectly consistent with the requirement that the parties to the agreement (express or otherwise) each have the specific intent to give or receive a thing of value in exchange for an official action.

government counsel recognizes that when the prosecutor carefully stated at the plea hearing that "the purpose that (sic) Mr. Campanella gave this money to Mr. Lynch was as a **reward** for the assistance that Mr. Lynch had previously provided to Mr. Campanella and also **to maintain and continue his relationship with Mr. Lynch** when the need for assistance would arise in the future," Transcript of Plea Hearing at 23:14-19, he was all-but-quoting from the portions of Kemp that define what bribery is **not**.

Moreover, the Court must give careful attention to the distinction between what the government alleged about Mr. Campanella's *mens rea* and *actus reus*, versus what it alleged about Mr. Lynch's. The government dismisses this analysis as a "strained effort" to "parse" the Information, but even in a conspiracy the government may not simply impute one defendant's mental state and actions to another. Each defendant is entitled to separate consideration on the question of whether he joined the conspiracy, as trial courts ultimately instruct juries. See generally Third Circuit Model Criminal Jury Instructions 3.12-3.15. Even when charging Mr. Campanella with the intent to "illegally reward and influence [Mr. Lynch] through a corrupt payment," the Information accused Mr. Lynch of "taking official action benefitting [Mr. Campanella] and his businesses," "without disclosing the corrupt payment and recusing himself." Information at ¶¶ 9-10. The distinction – amplified in several ways at the plea hearing – must mean something.

In any event, typically the government argues strenuously that the formulation of "reward[] and influence[]" (e.g., Information ¶ 3) alleges a gratuity and does not require proof of a *quid pro quo*. Here the government is curiously intent on sidestepping Kemp's holding that a "reward" is a mere gratuity and not a bribe. In the final analysis, the government finds support only its laundry list of "bribes, rewards, gifts, loans and other benefits," and the fortuity that the

15

first word is "bribe."  Information at ¶ 3.  But even though the government is not required to plead specific facts in a charging document, when it chooses to do the Court should examine the facts to see if they would prove the relevant crime.  "A charging document fails to state an offense if the specific facts alleged fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation."  Panarella, 277 F.3d at 685.  The rote incantation of the word "bribe," as one of several alternative descriptions of a single thing of value, cannot save the Information when the actions and mental states that are specifically delineated would not constitute bribery.

The procedural context in which this issue arises is important.  Coram nobis relief arises out of the Court's inherent authority to correct manifest injustice.  The Court is not construing the Information against a motion to dismiss, for example.  It is deciding whether to

(1)     import into a new context [coram nobis],

(2)     against circuit precedent [e.g., Dorasainvil, Osser, and Stoneman],

(3)     a procedural barrier to relief [actual innocence] that

(4)     was judicially-created to safeguard the procedural rules of a statute under which Mr. Lynch does not claim relief [§ 2255],

(5)     in circumstances that the circuit has stated do not require concern for gatekeeping [a recent statutory interpretation that decriminalizes the offense of conviction]; when

(6)     the government concedes that Mr. Lynch has neither defaulted nor waived his claim, and

(6)     the government concedes the existence of fundamental error.


The equities weigh against erecting novel barriers to relief in this case.  Any ambiguity in the Information was wholly within the government's control.  Government counsel were well-aware

of the significance of the language that they chose.  <u>Skilling</u> has made their strategic choice more costly than it seemed in 2007, and they now seek to externalize that cost onto Mr. Lynch.  The single reference to "bribe" in an Information that otherwise explicitly charges a non-bribery theory is too slim a reed to support the enormous cost of this manifest injustice.

**III.      If Court Does Require Mr. Lynch To Demonstrate Actual Innocence Of Bribery, It Should Hold An Evidentiary Hearing.**

At Mr. Lynch's sentencing, Judge Giles characterized the case in a way that demonstrates the folly of the government's position that the record conclusively demonstrates bribery:  he described "the character of the violation, which is – which can't be emphasized enough **not to be proven to have been a *quid pro quo* situation**."  Transcript of Sentencing Hearing, attached as Exhibit "D" to Mr. Lynch's Supplemental Submission In Support of Motion to Vacate, at 44:2-5 (emphasis added).  To now hold conclusively that Mr. Lynch **cannot** demonstrate actual innocence of bribery would snub Judge Giles's characterization of the record.  The sentencing judge certainly had the ability to treat bribery as relevant conduct at sentencing, had he thought that the record supported it by a preponderance of the evidence.  Federal Sentencing Guideline 1B1.3.  Instead he stated exactly the opposite:  the record did not demonstrate bribery at all. Certainly it is possible for Mr. Lynch to demonstrate his actual innocence of bribery when the record does not prove bribery even by a mere preponderance.

The government takes the fairly amazing position that the Court should treat the factual statements in its Guilty Plea Memorandum – the accuracy of which the defendant never admitted[11] – as "evidence" demonstrating that Mr. Lynch committed bribery.  Response at 29.

---

[11]      Although Judge Giles granted the government's request to incorporate the plea memorandum into the record, the Court never inquired of Mr. Lynch whether he had actually

17

Not only would this contradict Judge Giles's understanding of the record, it would turn the statements of government counsel into unrebuttable evidence and create a due process nightmare. It is particularly problematic here, because Mr. Lynch explicitly contested at his plea hearing the government's factual assertions about actions that he allegedly took on Mr. Campanella's behalf after receiving the payment. Transcript of Change of Plea Hearing, Exhibit "C," at, e.g., 27:18-28:11; 29:10-18; 33:20-35:8. In light of the government's concession that Mr. Lynch did not know in advance that Mr. Campanella would give him a thing of value (see Transcript of Change of Plea Hearing, Exhibit "C," at 23:10-14), only those subsequent actions – the nature and motivation for which Mr. Lynch contested – could form the "*quo*" to be exchanged for a "*quid*."[12] Ultimately the Court accepted the plea only upon assurances from both parties that questions of influence were superfluous to the crime. The Court may not now treat as conclusively established the very facts that Mr. Lynch explicitly denied, on a legal theory to which he (and the government) explicitly demurred. If the Court determines that Mr. Lynch must demonstrate his actual innocence of bribery, then it should hold an evidentiary hearing at which both parties may adduce evidence that is not currently part of the record. See Bousley, 523 U.S. at 624; see, e.g., United States v. Davies, 394 F.3d 182, 187 (3d Cir. 2005) (referring to evidentiary hearing on actual innocence).

---

reviewed the plea memorandum (the government simply represented that Mr. Lynch had) or agreed with its contents. Transcript of Change of Plea Hearing, Exhibit "C," at 21:12-18. The Court colloquied the defendant on the factual basis that the government recited orally, which clearly and carefully avoided any allegations of bribery.

[12] That is because one cannot form the specific intent to exchange an action for a thing of value until one knows that the thing of value will be delivered. See Kemp, 500 F.3d at 281.

## **CONCLUSION**

"There can be no room for doubt that [conviction and punishment for an act that the law does not make criminal] inherently results in a complete miscarriage of justice." <u>Dorasainvil</u>, 119 F.3d at 250-51 (quoting <u>Davis v. United States</u>, 417 U.S. 333, 334 (1974) (a § 2255 case)). For all of these reasons, and those stated in Mr. Lynch's *pro se* Motion to Vacate and his Supplemental Submission in support of that Motion, the Court should grant the Motion and vacate the judgment of conviction and sentence.

Respectfully submitted,


/s/_____
Lisa A. Mathewson, Esquire
The Law Offices of Lisa A. Mathewson, LLC
123 S. Broad Street, Suite 810
Philadelphia, PA 19109
(215) 399-9592
(215) 600-2734 (facsimile)
lam@mathewson-law.com

Counsel for James F. Lynch


April 14, 2011

**CERTIFICATE OF SERVICE**

I, Lisa A. Mathewson, do hereby certify that on this date I caused a true and correct copy of the foregoing to be served upon the following by electronic filing and electronic mail:

> AUSA Robert Zauzmer
> AUSA Richard Barrett
> United States Attorney's Office
> 615 Chestnut Street, Suite 1250
> Philadelphia, PA 19106-4476

/s/
Lisa A. Mathewson

Date: April 14, 2011