**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA        :

                           :

          v.                  :           CRIMINAL NO. 07-431-2

                           :

JAMES F. CAMPENELLA           :

## <u>MOTION TO VACATE CONVICTION AND SET ASIDE SENTENCE</u>

Defendant, James F. Campenella, by and through his attorney, Angela Halim, Esquire, hereby respectfully moves this court to vacate his judgment of conviction and set aside his sentence pursuant to 28 U.S.C. § 2255.

Mr. Campenella entered a plea of guilty to conspiracy to commit honest services fraud on September 7, 2007. The theory of honest services fraud advanced by the government at all times was based on co-defendant, James F. Lynch's, undisclosed conflict of interest. That theory of honest services fraud has since been deemed constitutionally invalid by the Supreme Court in *Skilling v. United States*, 561 U.S. ____, 130 S. Ct. 2896 (2010).

For this reason and the reasons set forth in the accompanying Memorandum of Law, Mr. Campenella respectfully requests that his conviction be vacated and his sentence set aside.

Respectfully submitted,


      /s/ Angela Halim     
Angela Halim, Esquire
Ahmad & Zaffarese, LLC
One South Broad Street, Suite 1810
Philadelphia, PA 19107
(215) 496-9373
(215) 496-9419 (facsimile)

Counsel for James F. Campenella

Dated: May 5, 2011

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 07-431-2 |
| | : | |
| JAMES F. CAMPENELLA | : | |

**MEMORANDUM OF LAW IN SUPPORT OF JAMES F. CAMPENELLA'S MOTION TO VACATE CONVICTION AND SET ASIDE SENTENCE**

Defendant, James F. Campenella, by and through his attorney, Angela Halim, Esquire, hereby submits this Memorandum of Law in support of his Motion to Vacate Conviction and Set Aside Sentence. Mr. Campenella pled guilty to one count of conspiracy to commit honest services fraud on September 7, 2007, and throughout Mr. Campenella's entire case, the Government advanced an undisclosed conflict of interest theory of honest services fraud. At the time Mr. Campenella pled guilty, that theory was valid support for an honest services fraud conviction. Today, following the Supreme Court's decision in *Skilling*, the conduct to which Mr. Campenella pled guilty is no longer a crime. For the reasons set forth more fully herein, Mr. Campenella's conviction must be set aside.

A. **THE SUPREME COURT'S *SKILLING* DECISION REDEFINES HONEST SERVICES FRAUD**

The *Skilling* decision substantially altered the application of honest services fraud and significantly restricts the statute that has been used as a Government weapon for decades. The Supreme Court's decision in *Skilling v. United States*, 561 U.S. ___, 130 S. Ct. 2896 (2010), reduced "honest services fraud" to its "solid core" of

bribes and kickbacks. Undisclosed conflicts of interest are no longer within the ambit of the honest services fraud statute.

Following the Supreme Court's 1987 decision in *McNally v. United States,* 483 U.S. 350, 360 (1987), holding that the federal mail fraud statute, 18 U.S.C. § 1341, criminalized only schemes to defraud a victim of tangible property, Congress quickly responded by legislatively overruling *McNally.* 18 U.S.C. § 1346 was enacted and the "the intangible right to honest services" was once again within the reach of § 1341 and its companion wire fraud statute, 18 U.S.C. § 1343. *See Skilling*, 130 S.Ct. at 2926-27.

Since the enactment of section 1346, Courts have struggled with defining the confines of "honest services" and limiting the overly broad scope of the statute. The Third Circuit settled upon an interpretation that confined honest services fraud to two theories: 1) bribery, which is a *quid pro quo* exchange of a thing of value for an official action; or 2) failure to disclose a conflict of interest resulting in a personal gain, while taking discretionary action to benefit that interest. *United States v. Kemp*, 500 F.3d 257 (3d Cir. 2007) (defining bribery under § 1346; *United States v. Panarella*, 277 F.3d 678, 690 (3d Cir. 2002)(defining the conflict of interest theory under § 1346). Eventually the Supreme Court, in *Skilling*, resolved the contours of the honest services fraud statute and examined the statute's constitutionality.

The *Skilling* Court declined to strike down §1346 as unconstitutionally vague (*Skilling*, 130 S. Ct. at 2928); however, the Court acknowledged the due process concerns presented by the statute and confined § 1346 to its "solid core" of bribes or kickbacks. *Id.* at 2930. That is, *Skilling* construed the honest services fraud statute

to place undisclosed conflicts of interest outside its reach. *Id.* at 2932-33. What is known in this circuit as a "*Panarella* theory" of honest services fraud – the failure to disclose a conflict of interest, while taking discretionary action to benefit that interest – is not criminal conduct after *Skilling*.

B.   **MR. CAMPENELLA'S CONVICITON MUST BE VACATED BECAUSE HE WAS NOT CHARGED WITH OR CONVICTED OF A CONSTITUTIONALLY VALID THEORY OF HONEST SERVICES FRAUD**

As an initial matter, *Skilling* applies retroactively and Mr. Campenella gets the benefit of *Skilling* even though his conviction predated the decision. This is a fact the government has conceded in other matters pending in this district. *E.g.*, Government Memorandum in Opposition to Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct the Sentence, at 17, *United States v. Mariano*, Crim. No. 05-614, Civ. No. 09-4272 (E.D. Pa.)(docket entry # 284).

It is likely that the government will take the position that Mr. Campenella must demonstrate actual innocence of bribery in order to prevail on collateral attack. That position, however, depends upon the assumption that the Government actually charged a bribery theory of honest services fraud in Mr. Campenella's case, when in actuality, it did not. Because the Information did not allege a viable theory of honest services fraud, Mr. Campenella's conviction and sentence must be vacated. (*See Skilling*, 130 S. Ct. at 2934-35, finding that because the Government did not allege that defendant accepted bribes or kickbacks, his conviction was flawed and the Court vacated the Fifth Circuit's affirmance of defendant's conviction).

Prior to Mr. Campenella's guilty plea for honest services fraud, the Third Circuit defined honest services fraud bribery. The Court ruled that such bribery

requires a *quid pro quo*, "a specific intent to give or receive something of value *in exchange* for an official act." *Kemp*, 500 F.3d at 281. The *Kemp* court explicitly distinguished a bribe from a "reward" and from a "general attempt to curry favor."

> [B]ribery requires a *quid pro quo*, which includes an 'intent to influence' an official act, or 'to be influenced' in an official act. This may be contrasted to both a gratuity, which 'may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he may already have taken,' and to a noncriminal gift extended to a public official merely 'to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future.' This discussion is equally applicable to bribery in the honest services fraud context, and we thus conclude that bribery requires a specific intent to give or receive something of value *in exchange* for an official act.

*Id.* (internal citations omitted, emphasis in original).

1. <u>The Charging Document in Mr. Campenella's Case Does Not Charge a Currently Valid Theory of Honest Services Fraud</u>

The Information, the Government's Plea Memorandum, and the prosecutor's statements at the change of plea hearing all demonstrate that Mr. Campenella was charged only with a theory that *Kemp* places squarely outside bribery.

The government's likely assertion that it charged a bribery theory of honest services fraud because the word "bribery" appears in the Information is nonsensical. The Information charges co-defendant James Lynch and Mr. Campenella with a conspiracy to violate 18 U.S.C. §§ 1341 and 1346. Specifically, the Information charges that Mr. Lynch's actions "while acting as a tax assessor for the Philadelphia Board of Revision of Taxes were unlawfully rewarded and influenced by bribes, rewards, gifts, loans, and other benefits he received from [Mr. Campenella], <u>all of</u>

which [Mr. Lynch] failed to disclose." Information, attached at Exhibit A (emphasis added). The Information contains this laundry list of formulaic vocabulary as a matter of form, not substance. *Quid pro quo* bribery was not charged, and aside from that one mention in paragraph three, the word "bribe" appears nowhere else in the entire document. The theory upon which the Government was proceeding is made clear in the "Manner and Means" section: the Information accuses Mr. Campenella of seeking to "illegally reward and influence Mr. Lynch through a corrupt payment," and Mr. Lynch of "taking official actions benefitting Mr. Campenella and his businesses," "without disclosing the corrupt payment and recusing himself as he was required by local and state law to do." *Id.* at paras. 9-10. The charging language directed at Mr. Campenella (and at Mr. Lynch, for that matter) is a pure *Panarella* theory of honest services fraud: failing to disclose a conflict of interest resulting in personal gain, while taking discretionary action to benefit that interest. Under *Kemp*, the "reward" language clearly signals a gratuity, and the "maintain his relationship" language clearly signals what *Kemp* calls a "general attempt to curry favor." Neither a gratuity nor "currying favor" rises to the level of the *quid pro quo* exchange that defines bribery. The charging document alleged a now-invalidated *Panarella* theory of honest services fraud, and at most a gratuity theory that has never been cognizable under § 1346

The burden is on the government to give fair notice in the charging document of the accusations that the defendant must meet. Nothing in the Information gave adequate notice that it charged a *quid pro quo* bribe; merely including the word "bribe" in boilerplate charging language – and nothing more – does not provide fair

notice of a bribery charge. Moreover, the Government's later representations in documents filed with the Court and at Court proceedings demonstrate that the Government did not subjectively intend to charge bribery either. In its Plea Memorandum, the government summarized the factual basis for the plea this way:

> Campenella gave Lynch approximately $20,000 in cash as a reward for the assistance provided by Lynch and to maintain his relationship with Lynch when the need for assistance arose in the future. Lynch failed to disclose this payment as he was required to do.

Plea Agreement, Attached at Exhibit B, p. 3.

2. <u>Discussions Occurring During Mr. Lynch's and Mr. Campenella's Change of Plea Hearings Make Clear the Government Was Not Proceeding on a Bribery Theory of Honest Services Fraud</u>

At Mr. Campenella's guilty plea hearing, counsel for the Government summarized the facts the Government would prove at trial and described the offense:

> In or about November of 2005, Mr. Campenella gave Mr. Lynch approximately $20,000 in cash as a reward for the assistance that Mr. Lynch had been – provided in the past, and also, among other things, to maintain his relationship with Mr. Lynch when the need for assistance would arise in the future.
>
> Mr. Lynch was required by law to disclose this payment and recuse himself from any further discretionary action involving Mr. Campenella and he failed to do so.

Tr. of Campenella Change of Plea Hearing, 22:6-13, attached hereto as Exhibit C (hereinafter referred to as "Campenella Tr.").

In responding to a question from former Judge Giles regarding Mr. Lynch's job title and function, Government counsel acknowledged that Mr. Lynch would

oftentimes negotiate with a private citizen or a
corporate entity on behalf of the City of Philadelphia.
His duty of loyalty was owed to the City of Philadelphia.
He was certainly empowered to make
recommendations to the Board that may enure to the
benefit of a private citizen or developer

However, he was under strict rules, both by City law, by
rule – ethical rules of the City, and by State law that he
was not to have a financial interest or a conflict of
interest with those against whom he was negotiating.

Campenella Tr., 26:4-13.

Later in the proceeding, the Judge asked Mr. Campenella, "[a]nd do you agree
that you paid money to Mr. Lynch, expecting from him that he would intercede on
your behalf and do things on your behalf?" Tr. Campenella Change of Plea Hearing,
26:21-23. Mr. Campenella's response was "No, not exactly, Your Honor. ..." Mr.
Campenella explained some of his interactions with Mr. Lynch which prompted the
Judge to ask, "What did you do that was improper?" Mr. Campenella responded,
"Your Honor, as a reward, I was grateful for his help and his assistance over a period
of time, and he was – I saw him in some financial straits and as a reward for his help,
I gave him $20,000." Campenella Tr., 27:1-22.

Mr. Campenella's counsel and Government counsel then held the following
exchange:

Counsel for Mr. Campenella: Your – Your Honor, the distinction that is being made
and – and it – may seem minor, but it is important, is
whether it was for future services or whether it was a
reward for helping with governmental matters in the
past. [Government counsel], these – when you listen to
part of what he said, made it appear as if Mr.
Campenella was acting for the – for a future benefit.
That is not what occurred. Mr. Campenella, I believe, is
trying to explain that because of his gratitude for the
help Mr. Lynch had given over a number of years, I think

two, three years, he gave him $20,000 in cash, which we agree is unlawful.

Campenella Tr., 27:23 – 28:9.

Government Counsel: Your Honor, and just to clarify, I don't disagree with what [counsel for Mr. Campenella] said, after that cash was given, there were future occasions when Mr. Campenella then continued to ask Mr. Lynch for assistance. <u>Mr. Lynch provided that assistance without disclosing that he had accepted this unlawful payment and without recusing himself, as he's required by law to do.</u>

And that's – when we talk about the future nature of this, we're not suggesting that Mr. Campenella explicitly said, you will do this in the future, but the crime of honest services fraud continued when Mr. Lynch [sic] made the pay – the unlawful payment as a reward for past actions and then continued to the – continued in the relationship of asking this public official to take discretionary action in his favor, <u>knowing that Mr. Lynch had not disclosed that financial relationship as he was required by law to do.</u>

Campenella Tr., 28:11-29:1(emphasis added).

The theory of honest services fraud advanced by the Government – consistent with the charging document – was a conflict of interest theory. At no point did the Government allege or assert that Mr. Campenella engaged in bribery; there was no *quid pro quo* and no allegation that Mr. Campenella provided something of value in exchange for an official act.

Moreover, Judge Giles characterized Mr. Lynch's misconduct during that same proceeding as the failure to disclose the $20,000.00 and the failure to recuse himself from further activities involving Mr. Campenella. Judge Giles summarized the Government's position to Mr. Campenella's conduct as " … the light that the Government I think is offering that the Court accept on the charges, is that it is not

claiming that Mr. Campenella specifically asked Mr. Lynch to do these subsequent acts for him contrary to his – his duty to the City. . . But Mr. Lynch did do those things … having not disclosed that he had – he was doing those things having received a $20,000 payment …" Campenella Tr., 32:8-18.

Mr. Lynch, at his Change of Plea Hearing, similarly maintained that he was pleading guilty to honest services fraud *only* on the theory of an undisclosed conflict of interest and for his failure to recuse himself from further matters involving Mr. Campenella. [1]

Government counsel, in describing the conspiracy at Mr. Lynch's Change of Plea Hearing stated that " … the agreement occurred once Mr. Lynch decided not to return the money and failed to disclose that he had received that money but continued to work with Mr. Campenella…" Lynch Tr., 26:12-15. Later, Government counsel explained to the Court, "Your Honor, if I – if I may, just to – clarify honest services law. We're not suggesting that necessarily the decisions changed because of the money. <u>What is a fraud under the law is that a public official who has accepted money then acts in an official capacity on matters that benefit the person who paid him without disclosing it.</u>" Lynch Tr., 32:13-18 (emphasis added).

---

[1] Mr. Lynch maintained at his Change of Plea hearing that his decisions were not affected by the money he received from Mr. Campenella and that he understood his wrongdoing to be his failure to disclose the $20,000.00 payment. He told the Court, "if you're asking me do I think that he was trying to buy influence, no, I don't think, because it really wouldn't have – any subsequent mattes, as [Government counsel] indicated, I probably should have recused myself." Tr. Of Lynch Change of Plea Hearing 29:6-9, attached hereto as Exhibit D (hereinafter referred to as "Lynch Tr.").

Taking the record as a whole – from the charging document to both Change of Plea hearing transcripts – it is clear that the government at every step of the way was proceeding on a *Panarella* conflict of interest and failure to disclose theory of honest services fraud. As such, the Court should not require Mr. Campenella to demonstrate his actual innocence of a crime with which he was never charged.

C.  **MR. CAMPENELLA'S CLAIM SATISFIES ALL CRITERIA OF A § 2255 ACTION**

*Skilling* was decided on June 24, 2010, and Mr. Campenella timely filed this Motion to Vacate within one (1) year of that decision. Mr. Campenella's sound reason for not seeking relief earlier is that he had no basis for relief earlier. The facts that he admitted at his plea colloquy were a crime at the time that he pled guilty. After *Skilling*, they are not.

The Supreme Court has made clear that a defendant may properly claim in a § 2255 collateral attack and motion to vacate, based on an intervening Supreme Court decision, his conviction was for "an act that the law does not make criminal." *Davis v. United States*, 417 U.S. 333, 346 (1974). *See also Bousley v. United States*, 523 U.S. 614, 621 (1998) ("it would be inconsistent with the doctrinal underpinnings of habeas review to preclude petitioner from" arguing that his conviction was constitutionally invalid because he pled guilty to conduct that was not criminal in light of a later Supreme Court decision). Moreover, because *Skilling* decriminalizes conduct that previously had been held to constitute honest services fraud, it applies retroactively to final criminal convictions. *See Bousely*, 523 U.S. at 620-21 (Supreme Court decisions "holding that a substantive federal criminal statute does not reach certain conduct" apply retroactively on collateral review).

1. <u>Mr. Campenella Satisfies the Procedural Requirements of a Successful 28 U.S.C. §2255 Claim</u>

Mr. Campenella's motion to vacate satisfies the procedural requirements of 28 U.S.C. § 2255. §2255 provides, in relevant part, "[a] prisoner in custody under sentence of a court … claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution … may move the court which imposed the sentence to vacate, set aside or correct the sentence."

Mr. Campenella is "in custody" for purposes of this motion. As the Court of Appeals for the Third Circuit has noted, one is "in custody" where he is "subjected to restraints not shared by the public generally – he [can]not come and go as he please[s], and his freedom of movement rest[s] in the hands of state judicial officers." *United States ex rel. Wojtycha v. Hopkins*, 517 F.2d 420, 423 (3d Cir. 1975). Actual physical imprisonment is not required, so long as a petitioner suffers from substantial restraints not shared by the public generally. *See Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973).

Mr. Campenella was sentenced to five (5) years probation on January 17, 2008, and he is still serving his probationary sentence. In serving his probationary sentence, Mr. Campenella's freedom of movement is restricted and he is still under the supervision of the courts. Regarding probationary sentences, the Supreme Court has specifically articulated that the standard conditions associated with probationary sentences "substantially restrict[s]" a defendant's freedom. *United States v. Gall*, 128 S. Ct. 586, 595 (2006). Mr. Campenella is therefore still in custody and he satisfied the first prong of a § 2255 inquiry. Regarding the remaining procedural prongs to a successful § 2255 collateral attack, Mr. Campenella has not

previously filed a § 2255 Motion and he is filing this motion within one year of the Supreme Court's June 24, 2010 *Skilling* decision.

As an aside, the fact that Mr. Campenella pled guilty rather than proceeding to trial does not bar him from collaterally attacking his conviction through a § 2255 Motion. *See United States v. Garth*, 188 F.3d 99, 108, n. 12 (3d Cir. 1999)(explaining that the District Court erred in restricting its analysis on collateral review because Garth pled guilty rather than proceeding to trial)(citing *Lee v. United States*, 113 F.3d 73, 76 (7th Cir. 1997)).

    2.    <u>Mr. Campenella's Motion to Vacate is Not Barred For Failure to Take Direct Appeal</u>

The fact that Mr. Campenella did not take a direct appeal of his conviction does not bar the instant motion to vacate. As an initial matter, Mr. Campenella had no recourse available to him on direct appeal. The only issue Mr. Campenella could conceivably have raised on direct appeal was whether conspiring with a public official for a failure to disclose a conflict of interest constitutes honest services fraud. The Third Circuit had repeatedly and consistently rejected that argument prior to Mr. Campenella's plea. No other challenge to Mr. Campenella's conviction was reasonably available to him at trial or after, until *Skilling*. Moreover, Mr. Campenella's plea agreement contained an appeal waiver, with a single exception for constitutional issues. *Skilling* clarified that what we now call *Skilling* error – the issue that this Motion raises – is constitutional error. Prior to *Skilling*, however, the constitutional nature nature of the error was not clear. Not only would an appeal have failed on the merits, it likely would have been dismissed out of hand. The same may be said of pre-*Skilling* collateral attack.

14

D.     **<u>MR. CAMPENELLA CAN DEMONSTRATE ACTUAL INNOCENCE</u>**

If the Court is inclined to agree with the government's likely position that Mr. Campenella failed to exhaust all remedies available to him, Mr. Campenella can satisfy the "cause and prejudice" prong of § 2255 by demonstrating actual innocence of the only remaining valid theory of honest services fraud:  bribery or a kickback scheme.[2]

A petitioner who can establish "cause" and "prejudice" or that he is "actually innocent" is not procedurally barred from filing a § 2255 motion where no appeal occurred.  *United States v. Garth*, 188 F.3d 99, 106 (3d Cir. 1999)(citing *Bousely v. United States*, 523 U.S. 614 (1998); *United States v. Sanders*, 165 F.3d 248, 250 (3d Cir. 1999).  "A fundamental miscarriage of justice occurs in those 'extraordinary circumstances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" *Tineo v. United States,* 977 F. Supp. 245 (S.D.N.Y. 1996)(citing *McClesky v. Zant*, 499 U.S. 467, 494 (1991).  "The second exception to the procedural default bar requires the defendant to establish that the constitutional error in his plea colloquy has probably resulted in the conviction of one who is actually innocent*." United States v. Garth*, 118 F.3d 99, 107 (3d Cir. 1999)(quoting *Bousely v. United States*, 523 U.S. 614 (1998))(internal quotations omitted).

To meet this admittedly narrow exception, Mr. Campenella must establish not only constitutional error, but also a colorable claim of factual innocence.  *See Tineo v. United States*, 977 F. Supp. 245 (S.D.N.Y. 1996)(citing *Schlup v. Delo*, 513 U.S.

---

[2] The Information and the transcripts from the guilty plea hearings are void of any reference to a kickback.  Mr. Campenella was never charged with engaging in a kickback scheme; therefore, he does not have the burden of demonstrating actual innocence of engaging in a kickback scheme.

298, 326-28 (1995)).  This requires Mr. Campenella to establish that in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted" him.  *See United States v. Garth*, 188 F.3d 99, 107 (3d Cir. 1999)(citing *Bousely v. United States*, 523 U.S. 614 (1998).  As the government will no doubt point out, actual innocence means factual innocence, not mere legal insufficiency.  *See United States v. Garth*, 188 F.3d 99, 107 (3d Cir. 1999)(citing *Bousely v. United States*, 523 U.S. 614 (1998).

      1.      <u>Honest Services Fraud Bribery Requires a *Quid Pro Quo* and is Distinguished From a Mere "Intent to Curry Favor"</u>

Honest services fraud bribery requires a *quid pro quo* which was not at all present in Mr. Campenella's case.  Prior to the *Skilling* decision other courts, including the *Kemp* court consistently distinguished bribery from "legal lobbying."

In *United States v. Ganim,* 510 F.3d 134 (2d Cir. 2007), the Court of Appeals examined jury instructions given at the defendant's trial regarding honest services fraud.  The Court upheld the following instruction:

> [B]ribery is not proved if the benefit is intended to be, and accepted simply as an effort buy favor or generalized goodwill from a public official who either has been, is, or may be at some unknown, unspecified later time, be in a position to act favorably on the giver's interest.  That describes legal lobbying.

*Id.* at 149.

The *Kemp* decision, discussed *supra* at pp. 3-4, was held up by *Skilling* as an exemplar of what remains of the honest-services fraud law.  The *Kemp* Court held that "bribery may not be founded on mere intent to curry favor," noting that there is a "critical difference between bribery and generalized gifts provided in an attempt

to build goodwill." *Kemp*, 500 F.3d at 281. The *Kemp* court went on to uphold jury instructions that had fairly communicated this "critical" distinction to the jury by carefully identifying those "noncriminal gift[s] extended to a public official merely 'to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future.'" *Id.*

Similarly, the Supreme Court has acknowledged there are some noncriminal gifts given to public officials in order "to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future. *Accord United States v. Sun-Diamond Growers of Cal.,* 526 U.S. 398, 404-06 (1999).

2.      Mr. Campenella is Actually Innocent of Honest Services Fraud Bribery

Against the legal landscape that clearly and consistently defines bribery as "a specific intent to give or receive something of value *in exchange* for an official act." *Kemp*, 500 F.3d at 281, there can be no doubt that Mr. Campenella did not engage in conduct that constitutes bribery.

Mr. Campenella did seek Mr. Lynch's assistance – in his capacity as an assessor for the Philadelphia Board of Revision of Taxes – to help resolve tax issues that arose on properties that were the subject of real estate projects with which Mr. Campenella was involved. As an initial matter, it bears noting that Mr. Campenella was not a sole owner of any of those properties; he was one of several partners in each venture. Mr. Campenella also sought Mr. Lynch's assistance correcting an address error on a parcel of property, among other things. There is no evidence in the record, nor did the Government ever allege, that Mr. Campenella asked Mr.

Lynch to do anything outside of his job function as a tax assessor; moreover, at no time did Mr. Lynch do anything on Mr. Campenella's behalf that was outside his ordinary job function as an assessor. Over a period of time, Mr. Campenella got to know Mr. Lynch, and he learned that Mr. Lynch had a disabled, special-needs son. Mr. Campenella was grateful for Mr. Lynch's help, and in approximately November 2005, Mr. Campenella gave Mr. Lynch $20,000.00. There simply is no evidence that Mr. Campenella gave Mr. Lynch any money – or anything else of value – in exchange for an official act.

From the outset and through the duration of his case, Mr. Campenella was forthright with the Government that he gave Mr. Lynch the money because he was grateful for his help and because he was aware of his personal situation with his disabled son. At best, Mr. Campenella's conduct is a reward or a noncriminal gift to "build a reservoir of goodwill." If the Court is inclined to agree with the Government's inevitable position that Mr. Campenella must demonstrate actual innocence, he respectfully requests the opportunity to develop the record further on this point.

E.  **CONCLUSION**

For the foregoing reasons, Mr. Campenella requests this Court vacate his order of conviction and set aside his sentence.

Respectfully submitted,


_____/s/ Angela Halim_____

Angela Halim, Esquire
Ahmad & Zaffarese, LLC
One South Broad Street, Suite 1810
Philadelphia, PA 19107
(215) 496-9373
(215) 496-9419

Counsel for James F. Campenella

Dated: May 5, 2011

## CERTIFICATE OF SERVICE

I, Angela Halim, do hereby certify that on this date I caused a true and correct copy of Mr. Campenella's Motion to Vacate and accompanying Memorandum of Law upon the following by electronic filing and electronic mail:

Robert Zauzmer, Assistant U. S. Attorney
Richard Barrett, Assistant U.S. Attorney
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

_____/s/ Angela Halim_____
Angela Halim, Esquire
Ahmad & Zaffarese, LLC
One South Broad Street, Suite 1810
Philadelphia, PA 19107
(215) 496-9373
(215) 496-9419 (facsimile)

Dated: May 5, 2011