UNITED STATES OF AMERICA       :

                                :

           vs.                      :

                                :

JAMES F. LYNCH and            :

JAMES CAMPANELLA          :       **Crim. No. 07-431**

## <u>DEFENDANT JAMES LYNCH'S SUPPLEMENTAL SUBMISSION REGARDING <i>UNITED STATES V. PANARELLA</i></u>

Defendant James Lynch respectfully submits this supplemental memorandum regarding a recent decision granting *coram nobis* relief in an honest services fraud case. <u>United States v. Panarella</u>, Crim. No. 00-655 (E.D. Pa. July 29, 2011) (McLaughlin, J.) ("<u>Panarella</u> Memorandum Opinion, attached as Exhibit "1"). In <u>Panarella</u>, Judge McLaughlin rejected the government's position that the <u>Bousley</u> "actual innocence" standard applies on *coram nobis*, at least as to a theory of the offense that the government neither charged nor deliberately forwent during plea negotiations.

Mr. Panarella had been charged only with a conflict of interest theory of honest services fraud, which <u>Skilling v. United States</u>, 130 S. Ct. 2896 (2009), invalidated. See <u>Panarella</u> Memorandum Opinion at 4-5. In opposing *coram nobis* relief, the government argued that Mr. Panarella should be required to demonstrate his actual innocence of the bribery theory of honest services fraud with which he was never charged. <u>Id.</u> at 14-15. Judge McLaughlin rejected that contention.

In this case the government contends that the defendants *were* charged with a bribery theory of honest services fraud (in contrast to Mr. Panarella). <u>E.g.</u>, Government's Response to

Motion for Writ of Error Coram Nobis, at 24. Both defendants contest that.[1] If the Court holds that Mr. Lynch was charged with bribery (a question that it may analyze independently of the question of whether Mr. Campanella was charged with bribery), then it must reach a question that Panarella did not formally present: does the Bousley "actual innocence" standard apply on *coram nobis* to charged conduct that is not a basis for the conviction? Mr. Lynch contends that it does not, for the reasons stated in his Supplemental Motion to Vacate Conviction (at 4 & n.3), and his Reply in Support of his Motion to Vacate (at 2-8). Consistently with Mr. Lynch's argument, Judge McLaughlin recognized in Panarella that even in the § 2255 context "actual innocence" applies only when the defendant procedurally defaulted his claim. Panarella Memorandum Opinion at 17. Moreover, Judge McLaughlin also noted that Mr. Panarella had been "convicted and punished" for conduct that Skilling decriminalized, id. at 19, which is the analysis that, Mr. Lynch contends, the Third Circuit's Stoneman and Osser decisions dictate: is this defendant in fact suffering punishment for conduct that is no longer criminal? See Mr. Lynch's Reply in Support of his Motion to Vacate at 3-4. That is, of what was this defendant actually convicted, for which he is currently suffering punishment?

---

[1]    Mr. Campanella is proceeding under 28 U.S.C. § 2255, because he is still "in custody." He contends that even under § 2255 he need not demonstrate his actual innocence of conduct with which he was not charged (see, e.g., Campanella's Motion to Vacate and Set Aside Sentence, at 5). The initial question before the Court with respect to Mr. Campanella is whether he procedurally defaulted his claim; and if so, whether he can show "cause and prejudice" for the default. Mr. Campanella may be required to show his actual innocence (at least of charged conduct) if the Court holds that he defaulted his § 2255 claim and cannot show separate "cause and prejudice" for the default. Bousley v. United States, 523 U.S. 614, 623 (1998).

If the Court holds that Mr. Lynch was not charged with a bribery theory of honest services fraud, then it will need to decide the same issue that Judge McLaughlin decided in Panarella: should the defendant be required to prove his actual innocence of a crime with which he was never charged? As it did in Panarella, the government urges this Court (here, as a fallback position) to require both defendants to prove their actual innocence of uncharged conduct. Mr. Lynch suggests that Judge McLaughlin correctly decided that at least on *coram nobis*, a defendant need do no such thing.

Respectfully submitted,

/s/_____
Lisa A. Mathewson, Esquire
The Law Offices of Lisa A. Mathewson, LLC
123 S. Broad Street, Suite 810
Philadelphia, PA 19109
(215) 399-9592
(215) 600-2734 (facsimile)
lam@mathewson-law.com

Counsel for James F. Lynch

August 9, 2011

## CERTIFICATE OF SERVICE

I, Lisa A. Mathewson, do hereby certify that on this date I caused a true and correct copy

of the foregoing to be served upon the following by electronic filing and electronic mail:

> AUSA Robert Zauzmer
> AUSA Richard Barrett
> United States Attorney's Office
> 615 Chestnut Street, Suite 1250
> Philadelphia, PA 19106-4476

> Angie Halim, Esquire
> Ahmad & Zaffarese, LLC
> One South Broad Street
> Suite 1810
> Philadelphia, PA 19107

/s/
Lisa A. Mathewson

Date: August 9, 2011

EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :      CRIMINAL ACTION

                 : 

         v.              : 

                 : 

NICHOLAS PANARELLA, JR.      :      NO. 00-655

MEMORANDUM

McLaughlin, J.                                   July 29, 2011

Before the Court is a petition for a writ of error coram nobis filed by Nicholas Panarella, Jr., who seeks to vacate his conviction as an accessory after the fact to an honest services wire fraud scheme. In 2001, Panarella pled guilty to a one-count superseding information, which charged him as an accessory after the fact to honest services wire fraud based on a theory of an undisclosed self-dealing. In _Skilling v. United States_, the Supreme Court limited the range of conduct prohibited by the honest services statute, and held that 18 U.S.C. § 1346 only criminalizes schemes involving bribes and kickbacks, not undisclosed self-dealing. On the basis of _Skilling_, Panarella now moves to have his conviction vacated by writ of error coram nobis.

The United States agrees that the theory of honest services fraud stated in the information to which Panarella pled guilty is no longer valid after _Skilling_. Nonetheless, it opposes coram nobis relief, and contends that Panarella must show

"actual innocence" under the remaining theory of honest services fraud that survives Skilling, with which Panarella was not charged.

After a full round of briefing, the Court held oral argument on the motion on January 11, 2011.  The Court will now grant the petition for a writ of error coram nobis and will vacate Panarella's conviction.

I.   Background

A.   Factual History[1]

Nicholas Panarella, Jr., operated a tax collection business, known as Municipal Tax Bureau ("MTB").  As part of this business, Panarella entered into contracts with various state and local government bodies in Pennsylvania to collect taxes owed to them.  In particular, Panarella derived significant revenue from the enforcement of Pennsylvania's "business privilege tax." Panarella developed expertise and marketing advantages in enforcing this tax against non-resident businesses that operated in a taxing jurisdiction without a physical place of business.

Around July 1993, Panarella entered into a written consulting agreement with F. Joseph Loeper, who served as

---

[1]The following facts are derived from the superseding information to which Panarella pled guilty.  The Court of Appeals for the Third Circuit has also outlined the facts of this case in United States v. Panarella, 277 F.3d 678 (3d Cir. 2002).

Majority Leader of the Pennsylvania Senate from 1994 through 2000.  Between 1993 and 1997, Panarella paid Loeper, both directly and indirectly, more than $330,000 in consulting fees, which were paid in monthly installments.[2]

Beginning in 1994, while majority leader of the Pennsylvania State, Loeper took actions that benefitted Panarella's business.  For instance, Loeper appeared with Panarella before local governments and attended meetings with Panarella and the Secretaries of two Pennsylvania state agencies, in an effort to obtain state collection contracts.  Neither Loeper nor Panarella disclosed their financial relationship to the governments or agencies.

In 1994 and 1995, Loeper spoke and voted against proposed legislation that would have restricted enforcement of the business privilege tax.[3]  These restrictions, which would have harmed Panarella's business, were ultimately defeated.  In addition, Loeper attended various meetings of the MTB Board of Directors throughout 1996, and was nominated to serve on the Audit and Compensation Committees of the MTB Board.

---

[2]Although Panarella originally paid Loeper directly, Panarella later began directing third parties to make the monthly payments on his behalf in order to conceal his financial relationship with Loeper.  By October 1996, Loeper was owed a total of $90,000 in past-due monthly consulting fees.

[3]Loeper also introduced an amendment to strike certain provisions from a bill that would have restricted enforcement of the business privilege tax.

3

While he was a senator, Loeper failed to disclose his income from Panarella as required by Pennsylvania law. Loeper filed false Statements of Financial Interest with the Pennsylvania Ethics Commission for the calendar years 1993 through 1997. These statements did not disclose Panarella or MTB as a source of income, nor did they disclose Loeper's membership on the MTB Board of Directors.

In August 1997, Loeper gave an interview to a newspaper reporter in which he lied about his sources of income. Loeper stated that he had disclosed all income on his Statements of Financial Interest. Loeper and Panarella then asked a third party, who paid Loeper on Panarella's behalf, to lie to the reporter about the nature of the payments. In addition, Panarella edited the third party's response to a letter from the reporter inquiring into the basis for the third party's payments to Loeper.

B.   Procedural History

A grand jury returned a seven-count indictment charging Panarella with aiding and abetting a mail and wire fraud scheme, in violation of 18 U.S.C. §§ 2, 1341, 1343, 1346. Panarella moved to dismiss the indictment for failure to state a crime, asserting that the theory of the indictment – aiding and abetting Senator Loeper's failure to disclose a conflict of interest – was

not cognizable.  The Court denied the motion.

The parties then entered into plea discussions.  On December 12, 2000, the United States filed a single-count superseding information charging Panarella with violating 18 U.S.C. § 3 by being an accessory after the fact to an honest services wire fraud scheme, in violation of 18 U.S.C. §§ 1343, 1346.  The scheme alleged in the superseding information was predicated on a "nondisclosure" or "conflict-of-interest" theory - that is, a scheme to deprive the public of Loeper's honest services by failing to disclose a conflict of interest.  Panarella unconditionally pled guilty to the charge in the superseding information, and was sentenced to six months of imprisonment, to be followed by one year of supervised release, and a $20,000 fine.

Panarella then appealed his conviction to the Court of Appeals for the Third Circuit, arguing that the theory of honest services fraud charged in the superseding information was invalid.[4]  Specifically, Panarella argued that, in the absence of allegations that Panarella bribed Loeper or improperly influenced his actions, Loeper's mere failure to disclose a conflict of interest could not amount to honest services fraud.  The Third

---

[4]Notwithstanding Panarella's unconditional guilty plea, the Third Circuit held that Federal Rule of Criminal Procedure 12(b)(2) permitted Panarella to challenge the sufficiency of the superseding information on appeal.  <u>United States v. Panarella</u>, 277 F.3d 678, 686 (3d Cir. 2002).

Circuit disagreed, and held that the undisclosed self-dealing theory charged in the information was valid, and did not require allegations of bribery or improper influence.  United States v. Panarella, 277 F.3d 678, 691 (3d Cir. 2002).  Panarella then served his sentence and paid his fine without incident.

In 2010, the Supreme Court narrowed the scope of the honest services fraud statute, 18 U.S.C. § 1346.  In Skilling v. United States, 130 S. Ct. 2896 (2010), the Supreme Court held that § 1346 proscribes only bribery and kickback schemes, which represent the "core" of honest services fraud.  Skilling, 130 S. Ct. at 2907.  The Court concluded that a broader reading of the honest services fraud statute would raise constitutional vagueness concerns.  In so holding, the Court explicitly rejected an undisclosed self-dealing theory of honest services fraud, such as the theory charged in the superseding information in this case, concluding that such a theory was "amorphous" and impermissibly vague.  Id. at 2932-33.

On the basis of Skilling, Panarella seeks to have his conviction vacated by writ of error coram nobis.  The Court will grant the writ and will vacate Panarella's conviction.

II.  Analysis

Panarella argues that he is entitled to a writ of error coram nobis, because the theory of honest services fraud set

forth in the superseding information is no longer a crime.  As a consequence, Panarella contends that his conviction is invalid and must be vacated.  Panarella argues that a writ of error coram nobis is the appropriate remedy, because he is no longer in custody but continues to suffer from collateral consequences arising out of his conviction.

The writ of error coram nobis is an ancient common-law remedy, the contours of which "have not been well defined." United States v. Denedo, 129 S. Ct. 2213, 2220 (2009) (quoting Bronson v. Schulten, 104 U.S. 410, 416 (1882)).  At common law, the writ was available to a court to correct technical errors of fact in a final judgment, such as an error in transcription or an error in the record.  Id.  The writ was limited to the same court where an action was commenced and where judgment was rendered. Id.

The Supreme Court first articulated the availability and scope of the writ of error coram nobis in United States v. Morgan, 346 U.S. 502 (1954).  In Morgan, the petitioner sought to vacate a conviction for which he had already served his sentence, on the basis that he had been deprived of counsel in violation of the Sixth Amendment.  The district court denied relief, concluding that the petitioner was ineligible to file a petition under 28 U.S.C. § 2255 because he was no longer "in custody," and no other remedies were available to attack his conviction.  The

Supreme Court disagreed, concluding that a writ of error coram nobis is available to a petitioner who is no longer "in custody" for purposes of § 2255, but who seeks collateral review of a conviction.[5]  Morgan, 346 U.S. at 511.  The Court explained that even after a sentence has been served, "the results of the conviction may persist.  Subsequent convictions may carry heavier penalties, civil rights may be affected."  Id. at 512-13.  Therefore, if the petitioner could show that his conviction was invalid, the trial court had the power to issue a writ of error coram nobis and vacate the conviction.  Id.

The Supreme Court then discussed the scope of coram nobis relief.  The Court concluded that a writ of error coram nobis can issue to redress a "fundamental error" in a final judgment, such as a Sixth Amendment deprivation of counsel, and is not limited to mere technical errors.  Morgan, 346 U.S. at 512.  The Court noted, however, that coram nobis is an "extraordinary remedy" and its use should be limited to cases presenting circumstances that compel its use to "achieve justice."  Id. at 511.  Indeed, a presumption attaches that the proceedings in question were correct, and the burden rests on the petitioner to show otherwise.  Id. at 512.

In 2009, the Supreme Court provided its most recent

---

[5]The writ of error coram nobis is available to federal courts in criminal matters under the All Writs Act, 28 U.S.C. § 1651(a).

pronouncement on the writ of error coram nobis.  In <u>Denedo v. United States</u>, 129 S. Ct. 2213 (2009), the Court explained that the writ in its modern form "is broader than its common-law predecessor." 129 S. Ct. at 2220.  Indeed, in view of <u>Morgan</u>, the writ can be used to correct "a legal or factual error," so long as that error is fundamental.[6]  <u>Denedo</u>, 129 S. Ct. at 2220-21.  The Court emphasized, however, that the writ remains an "extraordinary remedy," and should only be used where necessary "to achieve justice."  <u>Id.</u> at 2221.

The Court of Appeals for the Third Circuit has emphasized the stringent standard of review for coram nobis relief.  In view of the extraordinary nature of the writ, a court's jurisdiction to grant relief is of limited scope.  <u>United States v. Stoneman</u>, 870 F.2d 102, 106 (3d Cir. 1989).  Indeed, given the importance of finality in judgments, the standard for coram nobis is more stringent than that applicable on direct appeal, or even that applicable on review of a petition for habeas corpus relief under 28 U.S.C. § 2255.  <u>Id.</u>

In order to establish a right to coram nobis relief, therefore, a petitioner must satisfy several requirements. First, the petitioner must show that he is no longer "in custody"

_____

[6]An example of a legal error is presented in <u>Morgan</u>, where the Supreme Court concluded that the deprivation of counsel in violation of the Sixth Amendment could warrant coram nobis relief.  <u>See</u> <u>Morgan</u>, 346 U.S. at 512.

for purposes of 28 U.S.C. § 2255, but he continues to suffer from continuing consequences of the allegedly invalid conviction. Stoneman, 870 F.2d at 105-06.  The petitioner must also show that "sound reasons" exist for failing to seek relief earlier, and no alternative remedies are available.  Denedo, 129 S. Ct. at 2220; Stoneman, 870 F.2d at 106.

Finally, the petitioner must establish that the writ is needed to correct "fundamental error."  The error must be such as to "render the proceeding itself irregular and invalid," and it must go to the jurisdiction of the trial court.  Stoneman, 870 F.2d at 106 (citations omitted).  Errors that could be remedied by a new trial do not usually come within the writ.  Id.  Where a person is convicted and punished for conduct that is not a crime, such circumstances constitute the sort of fundamental error that may warrant coram nobis relief.  Id. at 105.

The parties primarily dispute whether Panarella has established fundamental error.  The Court will therefore begin its discussion with the fundamental error requirement, and will then turn to the remaining requirements for coram nobis relief.

The Court of Appeals for the Third Circuit has previously addressed the availability of coram nobis relief in the context of honest services fraud, and those cases control this Court's analysis.  Those cases, like the present case, arose in the wake of a Supreme Court decision that narrowed the scope

of honest services fraud.

In 1987, the Supreme Court held that the mail and wire fraud statutes criminalized only schemes to defraud involving money or tangible property, and did not reach schemes to deny the public of the intangible right to honest services. McNally v. United States, 483 U.S. 350 (1987).[7]  In the wake of McNally, defendants who previously had been convicted of honest services fraud sought coram nobis relief.

In United States v. Stoneman, 870 F.2d 102 (3d Cir. 1989), for instance, the petitioner's mail fraud conviction was based partially on an honest services theory, and he sought coram nobis relief after the McNally decision.  The Court of Appeals began by noting that, following McNally:

> A person charged in an indictment that did not
> include a loss of tangible rights or convicted by
> evidence that did not show a violation is punished
> for something not a crime and is entitled to
> collateral review.

Stoneman, 870 F.2d at 105.  Nonetheless, the Court denied coram nobis relief, because the petitioner had failed to establish fundamental error.  Specifically, the Court was unable to hypothesize a scenario in which a jury could have convicted the petitioner of honest services fraud without also finding that the petitioner was involved in a scheme that caused monetary loss.

---

[7]After McNally, Congress enacted 18 U.S.C. § 1346, codifying the intangible right to honest services as a valid theory under the mail and wire fraud statutes.

11

Id. at 104. Importantly, the Court noted that although the indictment alleged a conspiracy to defraud citizens of the intangible right to honest services, it also charged a scheme to defraud of "tangible monetary savings and financial benefits." Id. at 106. The indictment therefore alleged, and the evidence at trial supported, a valid crime that survived McNally, and the petitioner had not shown that the earlier proceedings were "irregular and invalid." Id. Accordingly, there was no fundamental error justifying coram nobis relief. Id. at 106.

Similarly, in United States v. Osser, 864 F.2d 1056 (3d Cir. 1988), the petitioner sought coram nobis relief on the basis of McNally after being convicted of mail fraud. At trial, the jury had been instructed on multiple theories that could support a mail fraud conviction, one of which was predicated on a scheme to defraud involving intangible honest services. Osser, 864 F.2d at 1058-59. As in Stoneman, the Court of Appeals denied coram nobis relief. The Court reasoned that although the jury had been instructed on an invalid theory of honest services fraud, it had also been instructed on a valid theory involving monetary loss. Therefore, McNally only proscribed one of the two theories on which the petitioner's conviction was based, and the petitioner could not establish fundamental error. Id. at 1058, 1063.

Courts within other circuits granted coram nobis relief following the Supreme Court's decision in McNally. For instance,

12

in <u>United States v. Mandel</u>, 862 F.2d 1067 (4th Cir. 1988), the petitioners sought coram nobis relief vacating their mail fraud convictions in view of language in the indictment and jury instructions that invoked an intangible rights theory.  At trial, the district court had refused to instruct the jury that it must find tangible loss, and instead instructed the jury that it could convict on the basis of honest services fraud.  <u>Mandel</u>, 862 F.2d at 1070.  The Fourth Circuit concluded that the invalid instructions constituted fundamental error in view of <u>McNally</u>, and granted coram nobis relief to the petitioners.[8]  <u>Id.</u> at 1074-75.

In view of the above case law, Panarella has established fundamental error.  As the Court of Appeals for the Third Circuit explained in <u>Stoneman</u>, where a defendant is convicted and punished "for an act that the law does not make criminal[,] there can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral relief."  <u>Stoneman</u>, 870 F.2d at 105 (quoting <u>Davis v. United States</u>, 417 U.S. 333 (1974)).

Panarella's conviction presents the "exceptional

_____

[8]In contrast to the Court of Appeals for the Third Circuit, the Fourth Circuit also held that "in a case in which the jury considers alternate theories of liability, we must reverse the convictions if either theory is an improper basis for punishment."  <u>Mandel</u>, 862 F.2d at 1073.

circumstances" envisaged by <u>Stoneman</u>.  In contrast to the petitioners in <u>Stoneman</u> and <u>Osser</u>, who were charged with both a valid and invalid theory, there is no dispute that Panarella was charged solely with the undisclosed self-dealing theory that was invalidated by <u>Skilling</u>.  Neither the superseding information nor the plea colloquy contains a discussion of bribery or kickbacks, and the United States concedes that it did not charge Panarella with such a scheme.  Govt.'s Opp'n at 28 n.9; Tr. of Oral Arg. on January 11, 2011 ("Tr."), at 20.[9]  Therefore, Panarella's conviction was predicated solely on conduct that is no longer a crime, which constitutes an error of "the most fundamental kind," such as "to render the proceeding itself irregular and invalid." <u>Stoneman</u>, 870 F.2d at 106 (citations omitted).

The United States nevertheless argues that Panarella has failed to establish fundamental error.  Although the government concedes that the undisclosed self-dealing theory with which Panarella was charged is no longer valid, it notes that <u>Skilling</u> did not entirely invalidate the offense of honest services fraud, but merely narrowed it.  As a consequence, the government argues that Panarella must go further and prove that he is "actually innocent" of the statute in all its applications.

---

[9] Indeed, in Panarella's direct appeal to the Third Circuit, the precise question before the Court of Appeals was whether the superseding information stated a crime for honest services fraud in the absence of any allegations that Panarella bribed Loeper. <u>Panarella</u>, 277 F.3d at 690.

14

Specifically, the government argues that Panarella must prove his "actual innocence" with respect to a bribery and kickback theory with which he was not charged.

In support of this "actual innocence" argument, the United States cites to several cases arising in the context of habeas corpus. The government relies primarily on <u>Bousley v. United States</u>, 523 U.S. 614 (1998). In <u>Bousley</u>, the petitioner pled guilty to "using" a firearm in violation of 18 U.S.C. § 924(c)(1). The Supreme Court subsequently reinterpreted the "use" prong of the statute, and the petitioner sought collateral review of his guilty plea under 28 U.S.C. § 2255. The Supreme Court concluded that the petitioner had procedurally defaulted on his claim by failing to raise it on direct review. <u>Bousley</u>, 523 U.S. at 621. The Court held, however, that the petitioner could obtain collateral review if he could establish his "actual innocence" of the offense on remand.[10] <u>Id.</u> at 623-24. The Court noted that the government would be permitted to rebut any showing of "actual innocence" with any admissible evidence of the petitioner's guilt, even if the evidence had not been presented during the plea colloquy. <u>Id.</u> at 624.

The United States also cites to <u>In re: Ocsulis</u>

---

[10]Specifically, the petitioner was required to establish that "it is more likely than not that no reasonable juror would have convicted him" of "using" a firearm, as the term was construed by the Supreme Court. <u>Bousley</u>, 523 U.S. at 623-24 (citing <u>Schlup v. Delo</u>, 513 U.S. 289 (1995)).

<u>Dorsainvil</u>, 119 F.3d 245 (3d Cir. 1997). <u>Dorsainvil</u> involved a comparable factual scenario to <u>Bousley</u>, insofar as the petitioner was convicted of "using and carrying a firearm" in violation of § 924(c)(1), and sought collateral review after the Supreme Court reinterpreted the term "using." The Court of Appeals noted that the petitioner had already filed a § 2225 petition, and was procedurally ineligible to file a second petition. The Court noted, however, that the petitioner was entitled to file a petition for a writ of habeas corpus under 28 U.S.C. § 2241. The Court of Appeals suggested, without deciding, that the petitioner would have to establish his "actual innocence" with respect to both "using" and "carrying" a firearm on remand. <u>Dorsainvil</u>, 119 F.3d at 252.

On the basis of these cases, the United States argues that the same "actual innocence" requirement should apply to the present case. The government acknowledges that Panarella, unlike the petitioners in <u>Bousley</u> and <u>Dorsainvil</u>, has not procedurally defaulted on his claims. Govt.'s Opp'n at 13-14. Nonetheless, the government argues that the rationale underlying the "actual innocence" requirement is that collateral relief is an extraordinary remedy. In the context of coram nobis, where a sentence has already been served, the interest in finality of judgments is paramount. According to the government, this interest should not be disregarded unless Panarella can show his

"actual innocence" of the offense under all possible theories.

The Court is not convinced that the "actual innocence" requirement is applicable to the present case. The "actual innocence" test is an equitable remedy that permits a petitioner to obtain collateral review of his underlying conviction, where his claims are otherwise procedurally barred. See, e.g., Schlup v. Delo, 513 U.S. 298 (1995). Indeed, the "actual innocence" standard was invoked in both Bousley and Dorsainvil precisely because the petitioners had otherwise procedurally defaulted on their claims. Panarella, however, has not defaulted on his claim, and instead has raised his argument at every stage of the litigation. Moreover, there is no indication in either Bousley or Dorsainvil that the "actual innocence" requirement would have been applicable in the absence of procedural default.

In addition, the United States has been unable to cite, and the Court has been unable to find, any cases in the coram nobis context that have applied an "actual innocence" requirement. The government relies on Stoneman and Osser to argue that Panarella must prove his "actual innocence" with respect to a bribery and kickback theory. Stoneman and Osser, however, are distinguishable from the present case. The petitioners in Stoneman and Osser were charged with multiple theories, only one of which was invalidated by McNally. As a consequence, they were not entitled to coram nobis relief. In

17

the present case, however, the sole theory with which Panarella was charged was invalidated by Skilling. Neither Stoneman nor Osser invoked an "actual innocence" standard, and there is no indication that the petitioners in either case would have been required to show innocence with respect to the theory that survived McNally, had it not been charged in the indictment or proven at trial.

The Court therefore concludes that an "actual innocence" requirement does not apply to this case. Even if it were to apply, however, the Court concludes that an "actual innocence" requirement would not support the United States' argument. In Bousley, the Supreme Court clarified the contours of the "actual innocence" requirement. Specifically, the petitioner in Bousley was required to show that he was "actually innocent" of "using" a firearm under § 924(c)(1), as that term had been construed by the Court subsequent to his conviction. Bousley, 523 U.S. at 624. The Court noted, however, that the petitioner need not establish "actual innocence" with respect to other, more serious charges, unless the United States had deliberately foregone such charges as part of plea bargaining. Id. The Court explicitly rejected the argument that the petitioner must show that he was "actually innocent" of both "using" and "carrying" a firearm, because the indictment charged the petitioner only with the "using" prong of § 924(c)(1).

18

Moreover, there was no evidence that a "carrying" charge had been foregone as part of plea bargaining.  Id.

The United States argues that Panarella must establish "actual innocence" with respect to the theories of honest services fraud that remain valid after Skilling.[11]  However, the superseding information to which Panarella pled guilty only charged an undisclosed self-dealing theory in violation of § 1346.  The United States has made no argument that it deliberately elected not to charge Panarella with a bribery or kickback scheme in exchange for his plea of guilty.  Therefore, if the "actual innocence" requirement were to apply, it would not advance the government's argument.  See Bousley, 523 U.S. at 624.[12]

In view of the foregoing analysis, the Court concludes that Panarella has established fundamental error and need not prove "actual innocence" with respect to uncharged crimes. Panarella was convicted and punished for conduct that is no longer a crime.  This error cannot be resolved by a new trial;

---

[11]See Tr. at 18 ("One theory has been invalidated ... Where this situation exists, you have to show that you're innocent of the statute in all its applications, because that statute is still there.").

[12]The Dorsainvil case is not to the contrary.  In Dorsainvil, the petitioner was charged with both "using" and "carrying" a firearm.  See Dorsainvil, 119 F.3d at 247, 252-53. Therefore, the requirement that the petitioner in Dorsainvil show his "actual innocence" with respect to both "using" and "carrying" is consistent with Bousley.

19

instead, the error goes to the jurisdiction of the Court, and renders the previous proceedings "irregular and invalid." See Stoneman, 870 F.2d at 105-06 & n.7 (citations omitted). Therefore, the error in question comes within the writ. See id. at 106.

Having concluded that Panarella has established fundamental error, the Court turns to the other requirements for coram nobis relief. As noted above, Panarella must show that he is no longer "in custody" for purposes of 28 U.S.C. § 2255, but he continues to suffer from continuing consequences of the allegedly invalid conviction. Stoneman, 870 F.2d at 105-06. The petitioner must also show that "sound reasons" exist for failing to seek relief earlier, and that no alternative remedies are available to him. Denedo, 129 S. Ct. at 2220; Stoneman, 870 F.2d at 106.

Panarella is no longer in custody, having completed his sentence several years ago. With respect to collateral consequences, the United States conceded at oral argument that it would not challenge this prong in the event the Court were to find that Panarella had established fundamental error. Tr. at 47-48. The Court agrees that Panarella has established collateral consequences arising out of his conviction.

The Court of Appeals for the Third Circuit has not articulated a precise standard for collateral consequences. At a

20

minimum, a petitioner must establish something more than mere moral stigma or reputational harm arising from a conviction. United States v. Cariola, 323 F.2d 180, 182 (3d Cir. 1963). Collateral consequences that have been sufficient to justify coram nobis relief have included denial of the right to vote, or the subsequent imposition of a sentence heavier than would have been appropriate absent an initial conviction. United States v. Osser, 864 F.2d 1056, 1059 (3d Cir. 1988) (citing Cariola, 323 F.2d at 182).

Other circuits have expounded on the requirement of collateral consequences. The Ninth Circuit, for instance, has concluded that collateral consequences flow from any criminal conviction. See, e.g., Hirabayashi v. United States, 828 F.2d 591, 606 (9th Cir. 1987). Similarly, the Fourth Circuit has held that felony status alone may be sufficient to satisfy the collateral consequences prong. See United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir. 1988).

By contrast, the Seventh Circuit has limited coram nobis relief to situations where a petitioner is "suffering civil disabilities unique to criminal convictions." United States v. Keane, 852 F.2d 199 (7th Cir. 1988). The Seventh Circuit in Keane identified certain "disabilities" that may warrant coram nobis relief, including "the loss of the rights to vote, hold occupational licenses (including law licenses), and bear arms."

21

<u>Id.</u> at 203.   The Seventh Circuit held that financial penalties and diminished reputation arising out of a conviction, however, are not sufficient to establish "continuing disabilities".   <u>Id.</u>

In <u>United States v. Craig</u>, 907 F.2d 653 (7th Cir. 1990), the Seventh Circuit identified three elements of "civil disabilities" that are sufficient to justify coram nobis relief:

> First, the disability must be causing a present harm; it is not enough to raise purely speculative harms or harm that occurred completely in the past.   Second, the disability must arise out of the erroneous conviction.   Third, the potential harm to the petitioner must be more than incidental.

<u>Craig</u>, 907 F.2d at 658.

The Court of Appeals for the Third Circuit has not adopted a particular test for collateral consequences.[13] Nonetheless, the Court concludes that Panarella has established collateral consequences even under the more stringent approach adopted by the Seventh Circuit.

As a result of his conviction, Panarella is suffering from collateral consequences that are both ongoing and real. Following his conviction, Panarella was suspended from the Pennsylvania bar for four years, with an effective date of July

---

[13]In <u>Osser</u>, the Third Circuit outlined the approaches adopted by different circuits, but did not adopt a particular test.   The Court expressed some skepticism, however, that collateral consequences could be satisfied based on the petitioner's having been denied a pension as a consequence of his conviction.   <u>Osser</u>, 864 F.2d at 1059-60.

10, 2001.[14] At the present time, Panarella has not been reinstated to the bar, and faces significant obstacles so long as his conviction persists. In a letter attached to Panarella's reply brief, Samuel C. Stretton, Panarella's disciplinary counsel, outlines the obstacles to reinstatement. At a minimum, Panarella will face significant delays in the reinstatement process so long as his conviction stands. In addition, Panarella cannot be reinstated to the bar unless he acknowledges wrongdoing and accepts responsibility for the facts underlying his conviction. If the conviction is vacated, however, Panarella may be able to invoke an expedited reinstatement procedure. See Letter from Samuel C. Stretton, Ex. A to Panarella's Reply.

Panarella's conviction also precludes him from securing employment in the various fields in which he has obtained experience. For instance, Panarella has submitted the declarations of several current and former municipal officials - including the Deputy Mayor of Philadelphia - who have opined that Panarella will be completely barred from obtaining professional service contracts in support of government functions so long as his conviction stands. See Declarations of Stephen W. Kidder, Rina Cutler, Handsel B. Minyard, Thomas J. Pruno, Sr., and Ronald A. Davis, Ex. C to Panarella's Reply.

---

[14]The suspension was imposed on May 11, 2004, and was made retroactive to July 10, 2001.

In addition, Panarella has military experience, having previously served in the United States Army's Special Forces and the Pennsylvania National Guard.  In view of his military background, Panarella's skills may be suited for employment with a private government contractor.  Due to his felony conviction, however, Panarella is unable to obtain a security clearance, and is therefore precluded from obtaining such a position.  See Declaration of William J. Davis, Ex. D to Panarella's Reply, ¶¶ 4, 10.  According to Radu Nedelcu, a Captain in the Massachusetts Army National Guard, a felony conviction is an automatic "No Go." Declaration of Radu Nedelcu, Ex. D to Panarella's Reply, ¶ 13.

Panarella faces a number of other continuing consequences as a result of his conviction.  At the present time, Panarella is unable to vote in Florida, his current domicile. Declaration of Nicholas Panarella, Ex. B to Panarella's Reply ("Panarella Declaration"), at 1.  In addition, Panarella is unable to obtain a firearm.  As a member of the Special Forces Association ("SFA"), a non-profit Veterans Service Organization, the inability to obtain a firearm means that Panarella is unable to participate in several of the organization's activities.  For instance, Panarella was unable to participate in the SFA's efforts to raise money by selling raffle tickets to firearms at gun shows.  See Declaration of James McCarthy, Ex. D to Panarella's Reply, ¶¶ 4-5, 13-14, 17-18.  Panarella also faces

24

numerous restrictions on international travel.  Panarella Declaration at 1-2.

The Court concludes that the collateral consequences outlined above are sufficient to justify coram nobis relief.  As a direct consequence of his conviction, Panarella remains unable to obtain employment in various fields.  Panarella also suffers civil disabilities in his everyday life, which impinge on his ability to perform his civic duties, participate in organizations, and travel.  These consequences are neither speculative nor incidental, but rather are ongoing and concrete.

Finally, the Court concludes that Panarella has satisfied the remaining requirements for coram nobis relief. Panarella could not have sought relief prior to the Supreme Court's decision in Skilling, because undisclosed self-dealing was recognized as a valid basis for an honest services fraud conviction.[15]  Indeed, Panarella filed the present motion on July 30, 2010, approximately one month after Skilling was decided.  In addition, no alternative remedies are available to Panarella. Panarella has been out of custody for several years, and no other mechanisms are available to obtain collateral review of his conviction at this time.

---

[15]Panarella's own appeals in this case evidence his inability to obtain relief prior to the Supreme Court's decision in Skilling.  See United States v. Panarella, 277 F.3d 678 (3d Cir. 2002).

25

Panarella has therefore satisfied the requirements for a writ of error coram nobis, and the Court concludes that the writ should issue and Panarella's conviction must be vacated.

An appropriate order shall issue separately.